■ CITY OF NEW YORK, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 51119.)—Appeal from an order of the Court of Claims, entered May 30, 1972, which denied the State's cross motion for summary judgment dismissing the claim. In 1963 the City of New York instituted a condemnation proceeding pursuant to former subdivision 5 of section 340-b of the Highway Law, and, by this claim, seeks reimbursement from the State for the parcel of real property owned by it and so condemned for interstate highway purposes. The land in question consists of property along the right of way of a public highway in the City of New York upon which playgrounds or ballfields were located, which uses are claimed by the State to be "incidental" to "parkway" use. The State's cross motion was made on the city's motion for summary judgment, but the city did not appeal from its denial. The cross motion was made on the grounds that the claim was time-barred and that the recondemnation of the land in question by the city is not compensable under section 3 of the General Municipal Law since, prior to the 1963 condemnation for expressway purposes, the city held the land for a parkway use which is a form of highway not substantially different from its subsequent use as an expressway. The final decree in the condemnation proceeding which was entered in the office of the Clerk of Queens County on August 20, 1968 awarded the city $227,800, which award was paid by the Comptroller of the City of New York to the city by warrant dated February 6, 1969. On February 26, 1969, request for reimbursement from the New York State Department of Transportation was made. The claim was filed on June 12, 1969. The State contends that since the City of New York was notified in May, 1967 that the State would not voluntarily pay for the parcel, a proceeding should have been brought within four months thereof, pursuant to article 78 of the CPLR, to review the "determination" denying the claim. This contention cannot be sustained. Prior to a judgment establishing the value of the parcel, no enforceable claim existed, and we are in agreement with the Court of Claims that a declaration by the State of the position it might take was premature as a rejection of that "claim". This is particularly so in view of the statutory provisions requiring, *inter alia,* submission of a certification of the amount due before a claim can be paid (former Highway Law, § 349-c, subd 3.3). The State contends, in the alternative, that since the damage became fully liquidated upon entry of the final decree on August 20, 1968, the claim "accrued" on that date and was not timely unless filed within six months thereof pursuant to subdivision 4

of section 10 of the Court of Claims Act. The city, on the other hand, argues that the six months' statute was complied with by attempting to show that the claim "accrued" within six months prior to June 12, 1969. We agree with this contention because no claim could have accrued here until the city complied with the statutory provisions of former subdivision 3.3 of section 349-c of the Highway Law and submitted to the State the requisite certificates setting forth the interest vested in the city and the amount due as reimbursement. Since that did not occur until February 26, 1969, the city's claim was thereafter timely filed within six months on June 12, 1969. Any failure on the part of the city to furnish such certificates at an earlier date can hardly be said to prejudice the State since its liability for reimbursement is statutorily limited by the amount of damages, interest, costs and expenses previously fixed by the condemnation court in its final award (former Highway Law, § 349-c, subd 3.3). The State's second contention on this appeal is that the claim does not state a cause of action in any event because the land in question was "incidental" to a "parkway" use and, therefore, has not been appropriated for "a purpose substantially different" so as to be compensable under section 3 of the General Municipal Law. That statute provides for compensation to municipal corporations where property of such corporations "is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held by such municipal corporation". We feel it unnecessary to discuss the opposing contentions of the parties on this point, for we agree with the Court of Claims that they raise factual issues which can only be resolved after trial. The city contends, however, that section 3 is inapplicable, arguing that it is given an absolute right to reimbursement by subdivision 5 of section 340-b of the former Highway Law regardless of the purpose for which the property was previously held. That statute provided in pertinent part that "Any property in the city of New York which is deemed by the superintendent of public works and the city of New York to be necessary for the construction * * * of interstate highways shall be acquired by the city * * * in the same manner as provided in section three hundred forty-nine-c * * * except that the city shall be reimbursed in full for the costs and expenses incurred by such acquisitions * * * in the manner as provided in section three hundred forty-nine-c". Section 349-c provided, in subdivision 3.3, that "the liability of the state shall * * * be determined by the amount of damages awarded by the court for the property acquired". The city takes the position that since its concurrence on the question of necessity was a prerequisite to initiation of this program of acquisition, the ultimate taking by the State is not pursuant to its power of eminent domain, wherefore section 3 of the General Municipal Law does not apply. We do not agree. The manner in which the State may ultimately acquire some jurisdiction and/or control over the properties in question is not determinative of the issues before us. The city's right to reimbursement of its costs and expenses is triggered, if at all, by an acquisition by the city. A problem is presented here, however, because the city itself already owned the property in question since 1938 and earlier. Thus, in order to be eligible for reimbursement, the city had to engage in the fiction of condemning the property from itself. This was done in a proceeding nonadversary in nature, since the city was proceeding only against itself, wherefore the question of whether the taking by the city of property held by a municipal corporation (itself) was for "a purpose substantially different" was not litigated. On these facts, it would not be proper to deprive the State as the only true adverse party in interest of the opportunity to litigate the compensability of this "condemnation".

This result, we think, is fair and in accordance with the legislative intent for, while the city engaged in the further fiction of paying the condemnation award to itself, no actual costs will have been incurred and no actual damage will have been done to the city if it is ultimately determined that the property was in fact held for parkway purposes since the land will continue to be devoted to a similar purpose. If, on the other hand, it is found that the property was held for a different purpose, the city will be properly entitled to compensation for the loss thereof. Order affirmed, without costs. Sweeney, Kane, Main and Reynolds, JJ., concur; Greenblott, J. P., concurs in the result in the following memorandum. Greenblott, J. P. (concurring in the result). I am in full agreement with the majority in its conclusions as to the applicability of section 3 of the General Municipal Law and the necessity for a trial to resolve the factual questions presented thereunder. I also agree that the claim was not time-barred, but for different reasons. While the majority accepts the city's contention that the six months' statute was complied with by attempting to show that the claim "accrued" within six months prior to June 12, 1969, I disagree and take the position that upon the unique facts of this case, the city was entitled to file its claim within two years. Subdivision 4 of section 10 of the Court of Claims Act provides that a claim thereunder ordinarily required to be filed within six months, may be filed within two years if a written notice of intention to file said claim is filed within six months. Here, no claim would have arisen in the first instance had not the State, acting through the then Department of Public Works, agreed upon a program whereby the lands in question were to be devoted to interstate highway use. In March of 1967, the then superintendent, in a letter to the Attorney-General, acknowledged that the "City Corporation Counsel * * * has indicated he will seek compensation for so much of this area as is not physically in current pavement use for the highway", and by letter of May 15, 1967, the General Counsel of the Department of Public Works advised the City Bureau of Right of Way "of the position [the department] shall take with respect to [the city's] demand" for compensation. A letter of May 18, 1967 to the city Corporation Counsel was to the same effect. On these facts, I am of the view that the State had been given notice of the city's intention to file a claim sufficient to constitute compliance with the provisions of the Court of Claims Act. Although we have held herein that a premature declaration of intent to reject a prospective claim is not a "determination" reviewable under article 78 of the CPLR, I find nothing objectionable in the unusual circumstances presented here, in permitting a notice of intention to be filed prior to accrual of a claim where all pertinent particulars of such claim were provided, since no statutory purpose is thereby defeated. The majority's position that the State was not prejudiced by the city's inaction between August 20, 1968 and February 26, 1969 would, if logically extended, give the city an indeterminate period of time to perform the acts which are conditions precedent to filing of a claim, thus circumventing the spirit and intent of the Statute of Limitations. I agree that the State was not prejudiced, but feel that such a conclusion should only be used to find that the State was indeed given notice within the contemplation of the statute so as to limit the city's time to file to a period of two years.