Robert J. Mangum, J.
This claim is one of several similar appropriations potentially involving millions of dollars for the City of New York. Filed seven years ago, their history painfully illustrates that the condemnee’s quest for just compensation may be as illusive as Don Quixote’s dreams. The within claim actually had its inception in 1963 when the mechanics for the taking and reimbursement were put into motion.
During these years, counsel have been inexorably locked in litigious sparring contests. Intransigence, rather than a realistic assessment of the legal problems has characterized, at least in this instance, the attorney’s windmill attacks.
Only now is a decision after trial forthcoming. A trial that hardly involved complex issues and consisted, during that moment of truth, of possibly 45 minutes of testimony, 13 exhibits, and one appraisal report.
This claim was deemed timely filed by the Appellate Division (49 AD2d 661) which affirmed a memorandum decision of this court entered May 15, 1972 denying a motion for summary judgment dismissing the claim.
The claim arises from a condemnation proceeding instituted in 1963 by the city, pursuant to former section 340-b (subd 5) of the Highway Law. The parcel which forms the basis of this claim is known as Damage Parcel 161, and was acquired for the purpose of building the Nassau Expressway. Damage Parcel 161 contained approximately 93,100 square feet located on the south side of North Conduit Avenue, south of 135th Avenue and 146th Street, County of Queens and City of New York. When the city originally acquired title to this land *491 through acquisitions in 1924 and 1938, though designated as water supply and park lands, it was ostensibly acquired for parkway purposes. At the time of the condemnation, however, the subject parcel was wholly devoted to recreational use. Maintained by the Parks Department of the City of New York, there existed an athletic field containing three baseball diamonds enclosed by a chain link fence, park benches and landscaping.
The relevant statute determinative of whether damages under these circumstances will be permitted is section 3 of the General Municipal Law. (City of Albany v State of New York, 28 NY2d 352; City of New York v State of New York, 49 AD2d 661.) This section in relevant part provides: "Where property of a municipal corporation * * * is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held by such municipal corporation * * * just compensation * * * shall be made in the same manner, to the same extent and subject to the same limitations as though it were private property.” This represents a statutory abrogation of the common-law rule that damages were recoverable only where the State condemned property held by the municipality in a proprietary capacity.
In determining the purpose for which the municipality held the property, the actual use at the time of the appropriation controls and should be given evidentiary weight. (City of New York v State of New York, 48 AD2d 79, 80; Town of Harrison v County of Westchester, 13 NY2d 258; NY Legis Ann, 1960, pp 471-472; 2 Nichols, Eminent Domain [3d ed], § 5.9, p 451.) In this regard and for many years prior to the taking, the subject area has been exclusively used as a recreational site.
The State submits claimant has failed to show how long a ball park existed on the subject parcel and therefore its presence was at best of a temporary nature. "The only thing that the City proved, at trial, was an existing ball park as of September of 1963.” This quest by the State might have some bearing upon the issue presented if the State could affirmatively show the recreational use came into being to create a "substantially different purpose” solely for compensatory reasons.
The evidence fell short of this object. The credible evidence supports a finding that Damage Parcel 161 was held for a substantially different purpose than that for which it was acquired in 1963. Whatever may have been the contemplation *492 of the parties when the subject property was originally acquired in 1924 and 1938, the land was either rededicated to recreational use or the highway purpose abandoned during these many years.
The statutory phrase "for which it is held” (General Municipal Law, § 3) is synonymous with the actual use being made of the property at the time of the taking. In this context a recreational or ball park area by any other name is hardly a parkway or highway.
Since just compensation requires evaluating the subject parcel as if it were private property, the highest and best use at the time of acquisition was residential and motel. The fee taking was an entire acquisition of the subject property.
Although the State prepared and filed an appraisal report, no evidentiary weight can be given it, as the appraiser was not called to explain his findings. (Wright v State of New York, 33 AD2d 616.) The testimony of the city’s appraiser also left much to be desired. The court, however, is constrainéd to adopt the appraisal report of the city, with the following exception, as it is the only evidence of value. (Ridgeway Assoc. v State of New York, 32 AD2d 851, 852.)
Improvements inconsistent with highest and best use cannot form a basis for value (Acme Theatres v State of New York, 26 NY2d 385) and generally receive a minus adjustment for demolition costs. Unlike City of New York v State of New York (49 AD2d 659) where the existence of a bridge created a unique factual circumstance, the application of the "inconsistent use rule” would not result in manifest injustice to claimant. There is no basis to figure demolition costs in the record, but the value of the chain-link fence will be deducted from the ultimate value figure determined from the city’s appraisal report.
The City of New York is entitled to an award in the amount of $188,300 together with appropriate interest for the total value of Damage Parcel 161. Interest shall be computed from February 26, 1969 to the date of entry of judgment herein.