Robert J. Mangum, J.
Defendant moves to dismiss the claim as having been untimely filed. In opposition, claimant maintains the claim was timely filed, but in the alternative has cross-moved for permission to file a late claim.
Pursuant to an agreement dated July 1, 1975 between the Long Island Lighting Company and the Office of Parks and Recreation, claimant was to remove lighting fixtures from the Wantagh State Parkway. The agreement detailed each party’s legal posture regarding who was to bear the cost of removal. Defendant contends that in accordance with the terms of claimant’s tariff arrangements, the removal was at the sole expense of the company. Completing the controversy, claimant alleges the tariff agreement is to the contrary and permits reimbursement for the expense of removing these fixtures when a customer terminates services.
The parkway work was completed August 26, 1975. On May 24, 1976 claimant wrote the Department of Transportation requesting payment in the amount, now demanded in the claim, of $125,341.79. The department responded by reminding claimant the work was ordered by the Long Island State Park Commission. By letter dated June 4, 1976, claimant forwarded its invoices seeking payment in the above amount to the Long Island State Park Commission. This was eventually received by the proper party, the Office of Parks and Recreation. On June 25, 1976 counsel for the agency advised claimant, that as outlined in their agreement of July, 1975, the claim was rejected and claimant was to pursue its remedy in the Court of Claims.
A notice of intention was filed with this court and the Attorney-General’s office on November 8, 1976. The claim was appropriately filed on the 26th of November.
Since the State refused payment in the agreement of July 1, 1975 and the agreement specified reimbursement was to be had through the legal process of the Court of Claims, counsel for defendant maintains that damages should have been known on or about the time of completion of the work, i.e., August 26, 1975. Counsel suggests "LILCO could justify a *818 filing of its notice of intention on November 8, 1976 as timely, only it [sic] its damages were not readily ascertainable until May 8, 1976 a date which is six months prior to the filing of its notice of intention to file a claim.”
The agreement merely confirmed each party’s interpretation of the tariff payment provisions for the removal of lighting fixtures and conceded proper recourse for their dispute would be in the Court of Claims. Its purpose was to permit claimant to proceed with the work of the contract without apprehension of prejudicing whatever legal remedy it had.
The agreement did not alter the legal responsibilities and obligations of the parties as enumerated in the tariff agreement. Neither did entering into this agreement abrogate any of the traditional rules respecting accrual of claims in contract disputes and the concomitant filing requirements set forth in subdivision 4 of section 10 of the Court of Claims Act.
Generally, when costs are rejected in whole or in part a claim accrues for purposes of this court’s filing requirements. (Terry Contr. v State of New York, 27 AD2d 499; Fletcher-McCarthy Contr. Co. v State of New York, 53 Misc 2d 62.) The rationale is that the expression "claim accrued” is not synonymous with "cause of action accrued.” "The claim accrues when it matures, and the words 'claim accrued’ have the same meaning as 'damages accrued.’ ” (Edlux Constr. Corp. v State of New York, 252 App Div 373, 374, affd 277 NY 635.)
On several occasions, the question of what effect repudiation of a contract, with respect to a performance not yet due, may have upon the accrual date for filing purposes has arisen in the Court of Claims. (See City of New York v State of New York, 40 NY2d 659; City of New York v State of New York, 49 AD2d 661.) A refusal to pay before there is a present duty of performance, is by definition an anticipatory breach. (10 NY Jur, Contracts, § 394, p 399.) While an anticipatory breach may give rise to a cause of action for breach of contract, the nonrepudiating party does not have to act upon a prospective breach but may continue with performance on his part and demand, as in this case, payment upon completion of his responsibilities. Since claimant, pursuant to the agreement of July, 1975, was bound to continue with performance, the rejection by the State prior to a proper demand for payment was premature for accrual purposes.
*819 Under the circumstances described, no money was due until claimant completed its contractual obligations. Until such time claimant could not formulate its costs according to the terms of the contract. These costs were predicated upon a formula of original cost less depreciation and salvage value. Until this tabulation could be made, demand for payment was superfluous. Since claimant waived the State’s anticipatory breach, the disclaimer in the agreement of July, 1975 was prospective and without operative effect at that time. It was the State’s rejection of the demand for payment in June, 1976, though premised on the July, 1975 agreement, that gave rise to the cause of action for breach of contract and was the catalyst for commencing the six-month period for filing a nonpayment claim, vis-á-vis, accrual of damages.
Therefore, the State’s averral that the filing of the notice of intention was timely only if claimant can show its damages were not ascertainable until May 8, 1976 is not, standing alone, entirely misplaced. Damages came into being and were ascertainable contemporaneous with the State’s rejection of the demand for payment. Any contrary holding would permit a claim to exist before its corollary — a cause of action — matured. In waiting for the State to reject the calculated costs, claimant was in effect giving the State an opportunity to reconsider the legitimacy of the claim.
While an inordinate delay in presenting vouchers for payment would be material regarding a question of loches, the State does not claim it was prejudiced by the hiatus between completing the contract work and presenting the request for payment.
A notice of intention was filed on November 8, 1976, within six months of the State’s rejection of the demand for payment. The claim, therefore, was timely filed on November 26, 1976.
Since the claim was timely filed, the court need not determine claimant’s alternative application to otherwise permit late filing.
The State’s motion to dismiss the claim for failure to timely file is denied.